Filed 5/2/23  In re A.N. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.N., a Person Coming Under Juvenile Court Law. | B319059 |
| | (Los Angeles County Super. Ct. No. 19CCJP06259A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SABRINA M. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge Pro Tempore.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant Sabrina M.

John L. Dodd & Associates and John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Ignacio N.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

In this dependency case, appellants Sabrina M. (Mother) and Ignacio N. (Father) raise only one issue. They argue an inadequate investigation by respondent Los Angeles County Department of Children and Family Services (DCFS) into their daughter A.N.'s status as an Indian child under California's version of the Indian Child Welfare Act (ICWA) requires us to reverse the juvenile court's termination of their parental rights, as well as its denial of their Welfare and Institutions Code section 388 petitions.[1] We conclude that the ICWA error, although admitted, was harmless. We therefore affirm.

Our Courts of Appeal are divided on how harmlessness is assessed in the context of an inadequate initial ICWA inquiry. That issue is currently pending before the California Supreme Court. While we wait for guidance from our higher court, we continue to apply the standard articulated by our colleagues in Division Two in *In re Dezi C.* (2022) 79 Cal.App.5th 769, 776, review granted Sept. 21, 2022, S275578 (*Dezi C.*), for the reasons explained in that opinion.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

## PROCEEDINGS BELOW

In September 2019, DCFS filed a non-detention petition on behalf of one-month-old A.N. under section 300, subdivision (b)(1), alleging that A.N. was endangered by Mother and Father's substance abuse.

The petition stated that an Indian child inquiry had been made, and that A.N. was potentially a member of the Fernandeño Tataviam Band of Mission Indians (Tataviam Tribe)—a non-federally recognized tribe. Mother filed an ICWA-020 form claiming both she and A.N. were or could be members of the Tataviam Tribe. The Tataviam Tribe later confirmed Mother's membership. The juvenile court also confirmed Mother's claim of Indian ancestry in the Tataviam Tribe, and a tribal representative appeared at the hearing on the petition. The court found no further ICWA notice necessary due to the representative's presence.

The parties agree that the Tataviam Tribe is not federally recognized. Thus, the parties agree that Mother's membership in the Tataviam Tribe did not make A.N. an "Indian child" under ICWA. However, the juvenile court had discretion to permit the Tataviam Tribe's participation in the proceedings, and, as further described below, it did so. (See § 306.6.)

The case culminated in a termination of parental rights. The reasons for termination are not pertinent to this appeal and we discuss them only briefly. In October 2019, the court ordered A.N. detained from Mother. In November 2019, Mother pled no contest to an amended petition, admitting that she was a "recent" abuser of methamphetamine, placing A.N. at risk of serious physical harm. A.N. remained placed with her maternal great-aunt, and Mother was

granted monitored visits and ordered to participate in a drug program with random weekly drug testing.

At a March 2021 hearing, the court terminated the parents' reunification services and expelled the parents from the hearing after they began threatening the court.

In May 2021, the court issued a restraining order against the parents at A.N.'s request, based on an incident in which Mother took A.N. from her aunt and brought her to her car. In November 2021, Father filed a section 388 petition to lift the restraining order. In January 2022, Mother filed a section 388 petition to reinstate reunification services, reinstate and increase visitation, and to lift the restraining order. The court heard both petitions in a March 2022 hearing. The court denied both petitions and subsequently terminated both parents' parental rights.

Notably, the court allowed the Tataviam Tribe the opportunity to participate in these proceedings, and the tribe took advantage of that opportunity. For example, in addition to the appearance at the hearing on the initial DCFS petition, a tribal representative appeared at hearings in October 2019, November 2019, and at the March 2022 hearing after which parental rights were terminated. In October 2019, the court ordered DCFS to give tribal representatives access to its reports, and DCFS thereafter consistently included the tribal representative when giving notice of hearings. The Tataviam Tribe approved A.N.'s placement with her maternal great-aunt in November 2019. During the March 2022 hearing, a representative of the Tataviam Tribe confirmed to the court that "many of the parties to this

4

case have kept consistent communication with the tribe in updating us" and explained the tribe was "monitoring this case and helping with longstanding permanency for the child."

Beyond Mother's membership in the Tataviam Tribe, the record discloses no claim from Mother of any other potential source of Indian heritage for A.N. Father filed an ICWA-020 form indicating that A.N. was or could be a member of the "Tataviam Band of Mission Indians— through the mother," but Father did not claim any other potential source of Indian heritage for A.N. No other indication in the record suggests that either Mother or Father had any other source of Indian heritage.

Throughout the proceedings, DCFS spoke with several extended family members. But there is no evidence that it inquired any further, at any time, about A.N.'s potential Indian heritage.

When it terminated parental rights, the court concluded that A.N. was not an Indian child under ICWA because the Tataviam Tribe was not federally recognized but noted the tribe's presence and participation in the proceedings.

Both parents timely appealed the denial of the section 388 petitions and the termination of parental rights. On appeal, neither Mother nor Father has made any proffer of evidence suggesting that A.N. is an Indian child within the meaning of ICWA.

## DISCUSSION

On appeal, both Mother and Father argue—their only argument— that DCFS's failure to make a sufficient initial ICWA inquiry into

A.N.'s status as an Indian child requires reversal. There is no dispute that DCFS's inquiry was inadequate. Under California's version of ICWA, DCFS had a duty to ask A.N.'s extended family members about any potential Indian heritage. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 776, rev.gr. ["the initial duty of inquiry mandated by California's version of ICWA obligates the Department to question 'extended family members' about a child's possible American Indian heritage"].) Nothing in the record indicates that DCFS did so. Relying in part on that inadequate initial inquiry by DCFS, the juvenile court found that A.N. was not an Indian child under ICWA.

The question is whether DCFS's inadequate initial inquiry requires reversal. Answering that question requires us to apply a standard for assessing whether DCFS's error in the initial inquiry was harmless. We note that our appellate courts are divided on this issue, which is currently under review by our Supreme Court. (See, e.g., *In re A.C.* (2022) 75 Cal.App.5th 1009, 1011; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *In re Rylei S.* (2022) 81 Cal.App.5th 309, 323; *Dezi C.*, *supra*, 79 Cal.App.5th 769, rev.gr.)

Here, unless the Supreme Court determines otherwise, we follow the rule articulated in *Dezi C.*, for the reasons articulated therein. Under that rule, "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of

6

proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, rev.gr.)

Applying that rule compels affirmance here. A.N.'s parents both claimed Mother was a member of the Tataviam Tribe, and the Tataviam Tribe agreed. But (as all parties admit) because the Tataviam Tribe is not federally recognized, Mother's status in the Tataviam Tribe did not make A.N. an "Indian child" for purposes of ICWA. Nothing in the record suggests that either parent was a member of any federally recognized tribe. Nor, particularly given that both parents *were* aware of Mother's membership in the Tataviam Tribe, is there any suggestion in the record that either Mother or Father might "unknowingly be [a] member[] of a [federally recognized] Indian tribe." (Cf. *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015.) Nor does either parent proffer, even on appeal, any specific reason to believe that A.N. might be an Indian child for ICWA purposes. Nothing else suggests that inquiry to A.N.'s extended family might have revealed that A.N. was an Indian child under ICWA, or that such inquiry would have changed the juvenile court's conclusion that A.N. was not an Indian child under ICWA. Thus, we hold that the ICWA error was harmless, and affirm the juvenile court's orders.

//

//

//

//

//

7

## DISPOSITION

The court's orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


DAUM, J.*

WE CONCUR:


CURREY, Acting P. J.


COLLINS, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.